LUIS PADIAL QUIÑONES, Petitioner and Appellee, *v.* PENSION BOARD, ETC., Respondent and Appellant.

No. 6819. Argued June 7, 1935.—Decided June 14, 1935.

*Benjamin J. Horton, Attorney General,* and *T. Torres Pérez, Deputy Attorney General,* for appellant. *L. Tirado Géigel* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Luis Padial Quiñones filed in the District Court of San Juan a petition for a writ of mandamus against the Pension Board of the Permanent Officers and Employees of the Insular Government, and alleged in substance, that on various dates from 1900 to March 31, 1933, he held several positions in the Insular Government, having served as inspector in the Department of Health from August, 1923, to March, 1933, when he submitted his resignation for inability to serve on account of sickness; that in January 1933, he applied to the defendant board for his retirement, sending at the same time medical certificates showing his physical disability; that in April 1933, the board denied his application, basing its refusal on the report of Dr. García Cabrera that the applicant was suffering from lymphangitis of the right leg and complained of cardiac pressure due to a certain specific infection—which lesions, in his opinion, did not constitute a total and permanent disability for work; that the applicant asked the board to reconsider its decision and the board refused to do so; and that when reconsideration was again asked, the board required him to submit to another examination by Dr. García Cabrera, to which the applicant acceded, but after the examination was made, the board persisted in its refusal. The report of the second examination is transcribed. It was a general physical examination and a partial examination of the urine, the blood, and the thoracic cavity, and the doctor reached the same conclusions as in the first examination: lymphangitis of the right leg, and complaint of cardiac pressure, with palpitation, caused by syphilitic infection; and he added that the occasional acute attacks of lymphangitis temporarily disabled the patient for work.

Based on those allegations, and maintaining that in accordance with section 6 of Act No. 104 of 1925 (Session Laws, p. 948) the board is bound to recognize the applicant's right to retirement, he prayed for the issuance of a writ of mandamus.

An alternative writ was issued. The board demurred and answered. The case was called for hearing, at which Dr. Sifre, Assistant Commissioner of Health, Dr. Domínguez, Chief of the Public Health Unit, Dr. García Cabrera, Physician of the Pension Board, and the applicant testified. The court finally rendered judgment in favor of the petitioner.

Thereupon the board appealed, and the hearing of the appeal was held on May 3 last; the attorneys of both parties attended and were heard. The appellee's brief, however, was not filed until the 7th of this instant month of June.

The statement of the case and opinion which forms the basis of the judgment, reads in part as follows:

"Going now into the merits of the case, we find that the testimony of Ramón J. Sifre and of César Domínguez, under whom the applicant served in Humacao, as health inspector, positively shows that the applicant was physically incapacitated for rendering useful and efficient service, by reason of a chronic disease, to such an extent that, as Dr. Sifre himself testifies, if the applicant had not asked for his retirement, then he would have recommended the Commissioner of Health to request it himself. The testimony of these two physicians strengthens that of the applicant. In regard to the applicant's state of health, Dr. García Cabrera, who was the physician who examined him on behalf of the defendant board, ratified his statement that the applicant 'is not totally and permanently disabled for work, but he does suffer from acute attacks of lymphangitis which incapacitate him temporarily.' He also found that the applicant has a cardio-vascular affection that does not allow him to make any sustained exertion of strength. These are the facts. Now for the law.

"Act No. 104 of 1925 (Sess. Laws, p. 270) (sic) establishes the retirement of the permanent officers and employees of the Insular Government of Puerto Rico; it covers and includes all employees in the classified or unclassified civil service, excepting only the Justices of the Supreme Court, professors in the University, public-school teachers, members of the Insular Police, and municipal employees. It is beyond dispute that the employee is included under the said Act. It is beyond dispute that the employee is suffering from chronic lymphangitis with cardio-vascular lesions. What we have to decide is: (1) Whether these lesions physically incapacitate the petitioner in

accordance with section 6 of the Act; and (2) whether the respondent board has any discretionary power to grant or refuse the pension.

"As to the first point, section 6 of the Act, in so far as it concerns the case at bar, provides: (*a*) that every officer or employee who has served the Insular Government for not less than seven years and who, before being entitled to retirement by reason of age or voluntarily (sections 4 and 8 of the Act) becomes physically incapacitated *'to render useful and efficient service because of sickness or injury, provided such sickness or injury has not been caused by vicious habits, intemperance or voluntary misconduct on the part of such officer or employee, shall be retired, upon his application or on petition of the head of his department or office, on a pension to be computed under section 7 of this Act.'* This is, in short, the provision we have to construe. So that if the petitioner herein was an employee of the Insular Government and, before reaching the age of 55 years and rendering 15 years of service, or before rendering 20 years of service, has become physically incapacitated to render useful and efficient service because of sickness or injury which has not been caused by vicious habits, intemperance, or misconduct, and he has so proved to the respondent board, the latter has no other course, under the law, than to retire him, granting him the pension under the provisions of the Act. From the admissions of the respondent we find that the petitioner submitted to the board all the particulars that he could furnish: certificates from physicians and from his superiors; some relating to his state of health and others to his disability. The board says that the reports rendered by its physician do not reveal such physical disability, and that it, in use of its powers, was not thereby bound to grant the pension. In his first report, Dr. García Cabrera states that the lesions do not constitute a reason for the applicant's total and permanent incapacity for work; in the second report, he states that the applicant suffers from lymphangitis which temporarily disables him for work.

"All that the oft-cited section 6 of the Pension Act requires is that the employee be physically incapacitated *to render useful and efficient service. The only authority to determine whether the service rendered by an employee is useful and efficient is the head of the office or department where the employee renders his services. The pension Board is without power or discretion to determine whether the services of an employee are useful and efficient. If the employee places the board in a position to be acquainted with his state of health, and likewise, through certificates from his superiors, shows his incapacity*

*for efficient and useful service, the duty of the board is ministerial and imperative, since, under these conditions, the employee must be retired on a pension in accordance with law.''* (The italics in the last paragraph are ours.)

We think that the view of the trial court in regard to the powers of the board is erroneous.

Section 6 of Act No. 104 of 1925 (Session Laws, p. 948), invoked by the applicant, prescribes that every officer or employee who becomes physically disabled to render useful and efficient service on account of sickness or injury, shall be entitled to retirement, provided the sickness or injury has not been caused by vicious habits, intemperance, or voluntary disconduct; provided further, that retirement shall not be granted to any officer or employee unless he is examined by a physician in the government service, or by a physician or surgeon duly authorized to practice his profession, or by a board of physicians or surgeons designated for the purpose by the board, and unless such officer or employee is found to be physically disabled to the extent and in the form provided in the act.

Section 11 of the same act provides:

"Section 11.—Pension allowed under this Act shall be payable monthly on the first working day of the month following the month or other period of time to which said pension corresponds, and payment on pensions or reimbursements shall be made by checks drawn in the form and with such security as the Auditor of Puerto Rico may prescribe. Applications for retirement shall be made as prescribed by the Pension Board, and shall be addressed by the employee to the head of the department or office where he shall have rendered or renders service and sa'd head of department or office shall refer the same to the Porto Rican Civil Service Commission in order that it may issue a certificate of the length of service rendered by the applicant. The Civil Service Commission shall return said application to the Pension Board with all documents showing the services rendered by the applicant, and the board shall decide whether the pension requested may be granted and the amount thereof, in accordance with this Act. Pensions shall be cons'dered and decided according to numerical order of presentation of each of them as shown by a

registry to be kept by the board; *Provided,* That when funds available for the payment of pensions are insufficient to meet all applications filed, the board may give preference to such applications as, according to circumstances and the merits of each case, deserve it, consideration being given to physical disability, age and period of service of the applicant.

"Upon approval of the pension, the board shall notify the head of the department or office to which said officer or employee belonged or belongs, the Auditor and the Treasurer of Porto Rico, respectively, for the purpose of the monthly payment of the pension granted. In cases of services rendered prior to the creation of the Porto Rican Civil Service Commission, said commission being unable to certify as to services rendered, the Pension Board shall have power to admit any documentary evidence submitted by the party concerned, and when such evidence is accepted, it shall have the same value as the certificate of the Civil Service Commission mentioned in this section. The Pens'on Board may make such investigations as it may deem necessary, and the members thereof shall have power to administer oaths in connection with the provisions of this Act."

Recently, this court, in the case of *Font* v. *Pension Board,* 48 P.R.R. 23, 28, after a study of its own decisions, said:

"The pet'tioner admits that the board before acting must satisfy itself as to the state of facts required by the law. And what is the state of facts which must be shown in this case in order for retirement to be granted? The law says clearly: the physical disability of the employee to render useful and efficient service by reason of sickness. How can the board, without exercising any discretion in weighing the evidence, formulate its judgment as to the existence or nonexistence of the fact in those cases in which the doctors disagree as to this fundamental question? Disability, if it exists, is a fact which must be shown. The function of the board is not to establish the fact, but to recognize its existence when it has been proved to it; but if the board is not satisfied as to its existence, it cannot be obliged to acccept it."

Leaving aside the question of whether the conclusion of the district court should have been based solely on the evidence considered by the board in making the decision of which the appellant complains, since such question has not been raised, and taking as a basis the result of the evidence

introduced by the appellant in the district court, as summarized by the trial judge in his statement of the case, which is to adopt the position most favorable to the appellant in the matter, even so, we do not think that it can be concluded that the board acted arbitrarily or abused its discretion in weighing the evidence or the attendant circumstances. Therefore, the writ of mandamus should have been denied.

We will again refer to the opinion of this court in the case of *Font* v. *Pension Board, supra,* this time, to that part thereof where it is said:

"As to whether the writ of mandamus is the proper remedy, we have stated, in interpreting the law, that the superior courts, while exercising their own sound discretion in the use of this flexible remedy, do review and control to some extent the discretion of inferior boards and tribunals, even in cases where the duty is such as necessarily requires the examination of evidence and the decision of questions of law and fact. *Muñoz* v. *Ramos, supra.* The court can weigh the evidence submitted to the board to determine whether any arbitrary act has been done or whether an error has been made, so manifest and palpable as to justify the issuance of a writ of mandamus. The exercise of discretionary power ought not to be capricious, abusive, or arbitrary, since where these elements are found it may be said that no discretion has been exercised. If an error has been committed of such a nature as to amount to a denial of justice, the courts will be justified in intervening through this extraordinary proceeding to correct the error. *Dyer* v. *Rossy,* 23 P.R.R. 718. We have read the petition in this case. It appears therefrom that there were submitted to the board the reports of Doctors Martínez Rivera and De Juan, selected by the petitioner, and those of Doctors Gutiérrez Igaravídez and Costa Mandry, selected by the said board, in addition to the report of Dr. García Cabrera, which was produced some time later. It is true that it is alleged that the board gave no weight to the opinions of Doctors Martínez Rivera and De Juan; but this, which seems rather a conclusion than an allegation of a fact, cannot be interpreted as meaning that the board failed to consider and weigh the report of those physicians. It is not alleged that the board has committed manifest error or that it has been arbitrary in the exercise of its discretion. On the contrary, it is said that the appellee board had no power to determine for itself, as it has done in this case, the fact of physical disability of the petitioner, but is

obliged to accept the medical opinion offered by the petitioner and coming from physicians in the service of the Government."

The judgment appealed from must be reversed and another rendered instead denying the petition, without special imposition of costs.